**SIERRA CLUB and the Wilderness Society, Plaintiffs,**

v.

**Richard E. LYNG, et al., Defendants.**

**Civ. A. No. 85–2226.**

United States District Court, District of Columbia.

Jan. 14, 1987.

Douglas L. Honnold, Denver, Colo., Eric P. Jorgensen, Washington, D.C., for plaintiffs.

Charles W. Brooks, Dept. of Justice, Washington, D.C., for defendants.

Fred A. Slimp, II, Robin L. Rivett, Sacramento, Cal., and Robert A. Kirshner, Washington, D.C., for amicus Louisiana Forestry Ass'n.

## MEMORANDUM

GESELL, District Judge.

By a complaint filed July 12, 1985, Sierra Club and the Wilderness Society have challenged the legality of a program initiated by the United States Forest Service under direction of the Secretary of Agriculture to control infestations of the Southern Pine Beetle in federally designated Wilderness Areas located in Arkansas, Louisiana and Mississippi. They claimed that the program was being conducted without first developing an environmental impact statement ("EIS"), in violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4347 (1982); that it violates the Endangered Species Act, 16 U.S.C. §§ 1531–1543 (1982), by harming the red-cockaded woodpecker, an endangered species which inhabits these areas; and that the extensive tree-cutting and chemical-spraying campaign involved is prohibited under Section 2 of the Wilderness Act, 16 U.S.C. §§ 1131–1136 (1982). After preliminarily enjoining the program in the three areas involved (subject only to a limited exception allowing some cutting for the benefit of the woodpeckers) pending development of an EIS, *see Sierra Club v. Block*, 614 F.Supp. 488 (D.D.C.1985), the Court now, for the second time, considers plaintiffs' long-deferred motion for summary judgment on its basic Wilderness Act claims, prompt development of an EIS having been repeatedly delayed. There has been full argument, and accompanying briefs, affidavits and documents have been considered.

Section 4(d)(1) of the Wilderness Act, 16 U.S.C. § 1133(d)(1), authorizes the Secretary of Agriculture to control insects within Wilderness Areas in the following terms: "such measures may be taken [by the Secretary] as may be necessary in the control of fire, insects, and diseases, subject to such conditions as the Secretary deems desirable." Plaintiffs' primary contention is that the Secretary is not authorized to undertake an insect control program in a designated Wilderness Area unless the Secretary can demonstrate that the program is necessary in the sense that it is effective, and that the program for the Southern Pine Beetle infestations which are under attack here must be restrained since the program is ineffective. They argue that the Wilderness Areas were being destroyed by extensive and continuing spot cutting of infestations pursuant to the Secretary's program without any appreciable success in curbing the pest and that wilderness values Con-

gress sought to preserve as a matter of affirmative national policy were, as a consequence, being permanently injured. The complex life cycle of the Southern Pine Beetle, an indigenous, well-known pest, has been elaborately studied and plaintiffs offered considerable data indicating the program's dubious effectiveness.

The Secretary presents both a legal and factual opposition. First, he asserts that the Court has no authority to consider the motion since Section 4(d)(1) leaves all management decisions affecting Wilderness Areas to his nonreviewable discretion. It is further suggested that since a different program may emerge with the eventual publication of the EIS the Court is being asked to issue an advisory opinion. Factually, the Secretary contends the program is effective in the sense that although continued cutting of spot infestations would be required, the program has somewhat slowed the appearance of new infestations as more and more mature pine trees are cut down and destroyed.

The Wilderness Act, as the Secretary urges, clearly places broad discretion in the Secretary to manage designated Wilderness Areas. Each area differs. There are no standards indicated for control of fire, insects or disease. Technical information and research must in the end guide the Secretary in the sensitive task of keeping nature's precarious balance within each area stable. Resolution of these decisions through litigation is surely counterindicated except upon the most explicit showing of arbitrary irresponsibility.

However, a further circumstance overhangs this particular dispute which must be considered. The Southern Pine Beetle program is not limited to Wilderness Areas and indeed the purpose and effect of the program is solely to protect commercial timber interests and private property, including, of course, national forests in which more draconian steps can be taken to eliminate the beetle. The extensive cutting in the Wilderness Areas that was being car-

ried out under the program until preliminarily enjoined was conducted solely to aid outside adjacent property interests, not to further wilderness interests or to further national wilderness policy.[1]

Both plaintiffs and the Secretary agree that Congress also intended by Section 4(d)(1) to authorize the Secretary to take actions within Wilderness Areas where necessary to control fire, insects, or disease from spreading beyond the areas and harming adjacent or neighboring private or commercial interests. The legislative history sustains this view. Plaintiffs' case therefore poses the declared national policy to preserve pristine wilderness ecology and values into sharp juxtaposition with the program's effectiveness, or lack of effectiveness, in controlling the harm being caused by pine beetles on adjacent property. Management of wilderness areas as such is not involved and the program could not be approved as a wilderness-management program.

Unfortunately, the material submitted on the motion provides no clear answers to the dilemma suggested. Pine beetles have a considerable range of flight and studies leave in doubt the extent to which they may migrate to or from adjacent pine land. There is no way the Court can determine from the material submitted to what extent beetle migration out of these particular Wilderness Areas into commercial timber properties may be adequately controlled under the program. Nor is it clear whether adjacent properties can be equally well controlled against beetle infestation by measures taken outside of the Wilderness Areas that would be wholly inappropriate within the Wilderness Areas.

■ Thus this case does not involve the management of Wilderness Areas as such. Rather, it presents a different question, one that is not fully addressed by the Act itself. That question is whether the Secretary has been given the same Section

---

1. To the extent any cutting may have been desirable to prevent undue harm to the red-cockaded woodpecker, such cutting would be minor due to the very few woodpecker habitats in these areas. This issue could be addressed in specific terms along the lines suggested by the Court's preliminary injunction if the program were abandoned.

4(d)(1) broad management discretion previously noted when he takes actions within the Wilderness Areas for the benefit of outside commercial and other private interests. This question must be answered in the negative because in a situation like this the Secretary is not managing the wilderness but acting contrary to wilderness policy for the benefit of outsiders.

■ A fair reading of the Wilderness Act places a burden on the Secretary affirmatively to justify his actions under these circumstances. Where such actions are shown to contravene wilderness values guaranteed by the Wilderness Act, as they do here, then the Secretary must, when challenged, justify them by demonstrating they are necessary to effectively control the threatened outside harm that prompts the action being taken. Here the Secretary has not addressed this affirmative burden.

Plaintiffs have amply demonstrated that the Southern Pine Beetle program as carried out in these three Wilderness Areas was wholly antithetical to the wilderness policy established by Congress.

The destruction of many acres of pine trees by chain sawing, and chemical spraying accompanied by noise and personnel in a continuing process unlimited in scope, is hardly consonant with preservation and protection of these areas in their natural state. These are delicate, sensitive places where the often mysterious and unpredictable process of nature were to be preserved for the study and enjoyment of mankind. Congress directed that man must tread lightly in these areas, in awe and with respect. Ruthless intrusion in disregard for these values was condemned as a matter of national policy. While many facts remain unclear, the record before the Court suggests that within Wilderness Areas, as mature pines are destroyed by the beetle there will be less and less possibility of outbreaks infecting neighboring areas. Only a clear necessity for upsetting the equilibrium of the ecology could justify this highly injurious, semi-experimental venture of limited effectiveness.

■ The Secretary has failed to demonstrate that the Southern Pine Beetle program as carried out in the three Wilderness Areas is necessary to control the presence of that pest in neighboring pine forests or that it has in any way been more than marginally effective in doing so. There is little evidence relating to the effect of the program on the beetle's tendency, if any, to move out of the Wilderness Areas. Conversely, the Court has not received any material indicating whether adjacent pine land, which has been already infected by the beetle, could be managed with less effective controls in the absence of the accompanying Wilderness authority. Nor is the Secretary's weighing of alternatives apparent. The record strongly suggests that the beetle cannot be irradicated and the solution of the problem is long-term, dependent for its ultimate efficacy upon further research and scientific study.

While the Secretary's program covers the South, this particular case only concerns a limited aspect. Serious problems exist in other southern regions and indeed the United States District Court for the Eastern District of Texas has before it a challenge to the Southern Pine Beetle program as it affects five Wilderness Areas in Texas, *see Sierra Club v. Lyng,* No. L–85–69–CA (E.D.Tex.). That Court has also been awaiting the EIS. The problems in different regions in all probability vary and what may be a necessity in one Wilderness Area, or effective there, may not be so in another. The very generality of the Secretary's approach suggests inadequate sensitivity to his wilderness duties.

Because this Court's analysis raises issues not fully addressed in the papers and because it suggests a need to particularize any approach to the Southern Pine Beetle program in terms of each Wilderness Area, area by area, the Court has concluded that final resolution of the motion can most appropriately await the EIS. The Court directs the parties to file further papers in support of or opposition to the motion within 30 days of the publication of the final EIS with emphasis upon the Secretary's burdens as set out herein in the light of whatever Southern Pine Beetle program emerges in the EIS. In the meantime, the

preliminary injunction remains in effect and final action on the motion will be held in abeyance. An appropriate Order is filed herewith.